<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____
                                :
ANTWAN FREEMAN,                 :
                                :   Civil Action No. 13-7627 (RMB)
          Petitioner,           :
                                :
     v.                         :         OPINION
                                :
KENNETH NELSON, et al.,         :
                                :
          Respondents.          :
_____ :
```

This matter comes before the Court upon Petitioner's <u>in forma pauperis</u> application, <u>see</u> Docket Entry No. 7, and his response to the Court's order, Docket Entry No. 2, directing him to state, in writing, why his § 2254 petition ("Petition"), Docket Entry No. 1, should not be dismissed as untimely.[1]

In light of Petitioner's <u>in forma pauperis</u> application, the Court will grant him <u>in forma pauperis</u> status and will direct the Clerk to reopen this matter. In light of the statements provided in the response, the Court will dismiss the Petition as untimely and will decline to issue a certificate of appealability.

---

[1] Petitioner qualified his response as "Motion to Show Cause [As To] Why [His] Habeas Corpus Petition Should Not Be Dismissed As Time Barred," <u>see</u> Docket Entry No. 8, at 1, and the Clerk too docketed this response as a "motion" and even set a deadline applicable to motion practice for "resolution" of the response. <u>See</u> Docket Entries Nos. 8 and dated March 17, 2014. Both the title of Petitioner's response and the Clerk's docketing of it as a "motion" appear inexplicable since only Respondents could have had an interest in filing such a "motion" because, if granted, the motion necessarily causes dismissal of the Petition, <u>i.e.</u>, it yields the very outcome Petitioner is striving to avoid.

The response averred to the following time-line: (a) on August 10, 2001, Petitioner was sentenced by the Law Division; (b) on November 22, 2005, the Appellate Division affirmed his conviction; (c) on August 7, 2006, the Supreme Court of New Jersey affirmed the conviction but directed re-sentencing; (d) on March 4, 2009, the Appellate Division affirmed Petitioner's re-sentenced term; (e) on September 24, 2009, the Supreme Court of New Jersey denied certification as to Petitioner's challenge to the re-sentenced term; (f) on April 15, 2010, Petitioner filed his application for post-conviction relief ("PCR"); (g) on December 12, 2010, that PCR application was dismissed by the Law Division as time-barred;[2] and (h) on July 15, 2011, the notice of appeal as to said dismissal of PCR was filed with the Appellate Division.  See Docket Entry No. 8, at 2-3.[3]  While Petitioner's response failed to detail the time-line of his appellate PCR proceedings, according to this Court's own research, the Supreme Court of New Jersey denied him certification as to his PCR

---

[2] The Petition averred that Petitioner's PCR application was filed on October 11, 2006, and dismissed by the Law Division on December 15, 2006.  See Docket Entry No. 1, at 3.  Moreover, the Petition averred that Petitioner did not file any other PCR application.  See id.  The Court notes its serious concern with these statements, which appear irreconcilable with Petitioner's position now asserted in the response, i.e., that Petitioner filed his PCR application on April 15, 2010, and the Law Division dismissed it on December 12, 2010.  However, the Court will entertain Petitioner's facts as reasserted in his response.

[3] As detailed infra, Petitioner maintains that the Law Division erred in dismissing his PCR application as time-barred.

challenges on November 13, 2013. See State v. Freeman, 2013 N.J. LEXIS 1271 (N.J. Nov. 18, 2013).[4]

The gist of Petitioner's response could be summarized in a statement that Petitioner concedes statutory untimeliness of his Petition but maintains that he should be entitled to equitable tolling because the delay in filing of his notice of appeal as to his PCR challenges was, allegedly, the fault of his PCR counsel. See Docket Entry No. 8, at 3-5 ("[Petitioner's] appointed counsel is to blame for failing to submit his notice of [appeal for the purposes of] post-conviction relief . . . on time").

Even if presumed true, Petitioner's position is unavailing. While Petitioner is correct that his Petition is time-barred, the untimeliness at hand is far more significant than what he seems to believe since the Petition is untimely by almost *three years*.

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The limitations period starts to run from "the date on which the judgment became final." 28 U.S.C. §

---

[4] Petitioner executed his Petition on December 5, 2013. See Docket Entry No. 1, at 7. For the purposes of the analysis at hand, this Court presumes, without making a factual finding to that effect, that Petitioner submitted the Petition to his prison officials for mailing to the Court on that very day, i.e. on December 5, 2013, and triggered the prisoner's mailbox rule.

3

2244(d)(1). A state-court criminal judgment becomes "final" within the meaning of § 2244(d)(1) by the conclusion of direct review or by the expiration of time for seeking such review, including the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court. See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); U.S. Sup. Ct. R. 13.

Here, Petitioner's AEDPA period began to run on December 22, 2009, i.e., ninety days from September 24, 2009 (i.e., from the date when the Supreme Court of New Jersey denied certification as to his challenge to the re-sentenced term), and expired one year later, i.e., on December 21, 2010, that is, almost three years before he executed the Petition at bar.

Petitioner maintains that his AEDPA period was statutorily tolled on April 15, 2010, when he filed his PCR application. He errs. Section 2244(d)(2) allows statutory tolling only for "[t]he time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is *pending*." 28 U.S.C. § 2244(d)(2) (emphasis supplied). Hence, the process of evaluating the timeliness of a § 2254 petition requires, inter alia, a determination of when any-level PCR application was both "properly filed" and "pending."

> An application is "[merely] filed," as that term is commonly understood, when it is delivered to, and

4

>   accepted by the appropriate court officer for placement
>   into the official record. [In contrast,] an application
>   is "properly filed" when its delivery and acceptance
>   are in compliance with the applicable laws and rules
>   governing filings. . . . [T]he question whether an
>   application has been "properly filed" is quite separate
>   from the question whether the claims contained in the
>   application are meritorious and free of procedural bar.

Artuz v. Bennett, 531 U.S. 4, 8-9 (2000) (citations omitted).

A PCR application dismissed by the state courts as untimely is not "properly filed" and, therefore, it cannot be "pending" during the period when the state courts address and dismiss it. See Pace v. DiGuglielmo, 544 U.S. 408 (2005) (state PCR petition rejected by the state courts as untimely under state statute of limitations is not "properly filed" for purposes of § 2244 (d)(2)).  Thus, *no* AEDPA statutory tolling applied during the time when Petitioner was litigating his PCR claims before the Law Division since both appellate levels of the state courts affirmed the Law Division's finding of untimeliness.  Correspondingly, Petitioner's AEDPA period expired just *nine days* after the Law Division's entered its PCR ruling on December 12, 2010.

Petitioner's attempt to shift the blame to his appellate PCR counsel (who filed a delayed notice of appeal) cannot salvage the Petition, since the nine-day difference between the date when the Law Division ruled on Petitioner's PCR challenges and the date when Petitioner's AEDPA period expired has no relation whatsoever to the actions/inactions of Petitioner's appellate PCR counsel.

Pursuant to New Jersey Court Rule 2:4-1(a), the time for filing a notice of appeal is *forty five* days.  Here, the Law Division dismissed Petitioner's PCR as untimely on December 10, 2010.  Therefore, under the state rules, Petitioner's state counsel had until January 24, 2011, to file a timely notice of appeal.  Had such notice of appeal been filed on any day between December 21, 2010, and January 24, 2011, inclusive, it would be timely under state law but that is of no import for the purposes of the AEDPA analysis since the AEDPA period expired on December 21, 2010.  It follows that, for the purposes of the AEDPA analysis, it is wholly irrelevant whether the notice of PCR appeal was filed timely under state law or on July 15, 2011 (that is, the date when the notice of appeal was filed in actuality, i.e., untimely under the state law).  Simply put, nothing in the state law obligated Petitioner's appellate PCR counsel to file the notice of appeal prior to the expiration of the state deadline since state law neither can nor does obligate counsel to ensure preservation of inmates' rights to federal habeas review.  The obligation to monitor the federal deadlines and to file a timely federal habeas petition is entirely those of the inmates and not of their state counsel.[5]

---

[5] Moreover, the Court of Appeals held that even where state counsel *affirmatively misleads* an inmate about the relationship between the state law PCR deadlines and federal habeas deadlines, such misrepresentation is still insufficient to supply the inmate

The Court is mindful that, in addition to his attempt to shift blame to his appellate PCR counsel, Petitioner is also attempting to shift blame to the state courts: by asserting that the Law Division erred in dismissing his PCR application as untimely. See Docket Entry No. 8, at 3 ("[The Law Division] erroneously counted time that was supposed to be *tolled*") (emphasis supplied). This argument is meritless. Unlike the federal regime, the state rule has no "tolling" provision built into it and, thus, nothing could have been tolled under the state law. See N.J. Ct. R. 3:22-12.

Moreover, in the event Petitioner's use of the word "tolled" meant to imply his reference to the "refiling" provisions embedded into the state rule, these provisions were inapplicable to his circumstances and, thus, the state courts duly declined to apply them.[6]

---

with a viable ground for equitable tolling. See Johnson v. Hendricks, 314 F.3d 159, 162-63 (3d Cir. 2002) (in non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes are not the extraordinary circumstances warranting equitable tolling), cert. denied, 538 U.S. 1022 (2003). In addition, even though a PCR proceedings before the Appellate Division do, generally, trigger statutory tolling, such tolling cannot render a federal habeas petition timely if the appellate PCR process took place after the AEDPA period expired. Accord Long v. Wilson, 393 F.3d 390, 394-95 (3d Cir. 2004) (a litigant's PCR application, even if properly filed under the state law by submitted after her AEDPA period expired cannot render his § 2254 petition timely).

[6] Rule 3:22-12 provides:

Since the Law Division made factual determinations that the initial PCR application was untimely, and that Petitioner did not

---

> [(a)](1) First [PCR application].  Except as provided in paragraphs (a)(2), (a)(3), and (a)(4) . . . , no [PCR application] shall be filed . . . more than 5 years after the date of entry . . . of the *judgment of conviction* . . .
>
> [(a)](2) . . . [N]o second or subsequent petition shall be filed more than one year after . . .  the date of the denial of the first . . . application for post-conviction relief . . . .
>
> [(a)](3) . . .  A [PCR application] dismissed without prejudice . . . because a direct appeal . . . is pending, shall be treated as a first [PCR application] . . . if refiled within 90 days of the date of the judgment on direct appeal [as to the conviction] . . . or within five years [from the original judgment of conviction].
>
> [(a)](4) . . .  A [PCR application] dismissed . . . without prejudice [for procedural or jurisdictional deficiencies] shall be treated as a first [PCR application] . . . if [the deficiencies are corrected and it is] refiled within 90 days after the date of dismissal, or within five years [from the original judgment of conviction].

See also State v. Walters, 2013 N.J. Super. Unpub. LEXIS 2088, at *3, n.2 (N.J. Super. Ct. App. Div. Aug. 22, 2013).

Here, Petitioner's judgment of conviction was entered on August 10, 2001.  As noted supra, the Petition at bar suggests that Petitioner might have filed a PCR application on October 11, 2006 (seemingly in response to the Supreme Court of New Jersey's affirmance of his conviction with a directive to re-sentence), and the Law Division dismissed that PCR application on December 15, 2006.  See Docket Entry No. 1, at 3.  (The Petition did not explain whether the dismissal was on the grounds of untimeliness or alternative grounds.  See id.)  The PCR application upon which Petitioner now relies (i.e., the one filed on April 15, 2010) was submitted more than four and a half years out of time for the purposes of Subsection (a)(1) and could not fit within any of the exceptions of Subsections (a)(2), (a)(3), and (a)(4).  Thus, the April 15, 2010, PCR application was duly dismissed as untimely.

qualify for the quasi-equitable "excusable neglect" exception allowed by the state regime (and the Appellate Division and the Supreme Court of New Jersey affirmed both those determinations), this Court is bound by the state courts' findings unless Petitioner shows, *by clear and convincing evidence*, that both state courts' factual findings were erroneous.  See Stevens v. Delaware Correctional Center, 295 F.3d 361, 368 (3d Cir. 2002) (federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary").

Here, the facts asserted by Petitioner verify that the state courts duly followed Rule 3:22-12.  Petitioner offered this Court no clear and convincing evidence to the contrary; in fact, he offered the Court no evidence of any kind: all he offered was his self-serving assertion that he should have been entitled to a certain "tolling" which the state law neither envisioned nor allowed.  Since this bold assertion cannot offset the state courts' findings, the Petition at bar is necessarily untimely, and this Court is constrained to dismiss it.[7]

---

[7] Since Petitioner's position (that he should have been entitled to equitable tolling for the purposes of the instant matter) is limited to his unavailing attempt to shift blame to his appellate PCR counsel, and the attachments to Petitioner's response establish that Petitioner was well aware of the relevant deadlines, he cannot qualify for equitable tolling.  Had he

Upon so finding, the Court is obligated to determine whether a certificate of appealability ("COA") shall issue. A COA shall issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, jurists of reason would

---

wished to ensure preservation of his right to federal habeas review, he could have commenced a Section 2254 proceeding at the time when he was urging his appellate PCR counsel to seek state appellate review. If some of his federal challenges were still unexhausted, Petitioner could have sought stay and abeyance of his federal petition until completion of his PCR proceedings. See Rhines v. Weber, 544 U.S. 269 (2005). Alternatively, he could have filed a "protective" petition setting forth at least his exhausted direct appellate claims, see Pace, 544 U.S. at 416, and taken advantage of the holding of Mason v. Meyers, 208 F.3d 414 (2000), that allows a § 2254 litigant both an opportunity and the time to withdraw a "protective" petition and file an all-inclusive petition in its place. Indeed, in light of the length of his direct appellate process, he had – with the AEDPA period factored in – *more than nine years* and yet he elected to do nothing. He invested all his efforts in fostering his state PCR appeal while neglecting his federal rights, year after year. Since he was "sleeping on his rights," he cannot qualify for equitable tolling. See Munchinski v. Wilson, 694 F.3d 308, 331 (3d Cir. 2012) (a litigant shall not be rewarded for "seeping on his rights").

not find it debatable that this Court was correct in its finding that the Petition is untimely.

Accordingly, no COA will issue.

An appropriate Order accompanies this Opinion.


                                                s/Renée Marie Bumb
                                               **RENÉE MARIE BUMB**
                                               **United States District Judge**

Dated: May 21, 2014